IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:13-cv-23745

JORGE PORTER,

    Plaintiff,

v.

METROPCS COMMUNICATIONS, INC.,
METROPCS FLORIDA, LLC, and
CAI INTERNATIONAL, INC.,

    Defendants.

_____/

*State Court Case: Case No. 12-17187-CA-25*
*(Miami-Dade County Circuit Court)*

## NOTICE OF REMOVAL

Defendants MetroPCS Communications, Inc. and MetroPCS Florida, LLC (collectively, "MetroPCS") remove this action from the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1441, 1446 and 1453. In support of this removal, MetroPCS states as follows.

### JURISDICTIONAL STATEMENT – DIVERSITY JURISDICTION

1.    The Class Action Fairness Act of 2005 (CAFA), Pub. L. No. 109-2, 119 Stat. 4 (2005) extends diversity jurisdiction to putative class actions that have: (1) been commenced after February 18, 2005; (2) minimal diversity; (3) 100 or more class members; and (4) an aggregate amount in controversy over $5,000,000. *See* 28 U.S.C. §§ 1332 note, 1332(d)(2)(A), 1332(d)(5)(B), 1332(d)(6). This action satisfies each of those jurisdictional prerequisites.[1]

---

[1] Strictly speaking, CAFA's amount in controversy requirement is located in § 1332(d), which applies to actions that are filed by plaintiffs, not § 1453, which applies to actions that are removed by defendants. Nothing in CAFA suggests, let alone requires, that actions that are removed under § 1453 must also satisfy the amount in controversy requirement of § 1332(d). *See* 14B Charles A. Wright et al., Federal Practice & Procedure § 3724 (4th ed. 2009). As many have assumed otherwise, however, we will do the same for present purposes.

**Commencement**

2.       Plaintiff Jorge Porter ("Plaintiff") commenced this action on or about May 1, 2012 by filing a complaint in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, under the caption *Porter v. MetroPCS Communications, Inc., et al.*, No. 12-17187-CA-25.

3.       Accordingly, this action was commenced after CAFA's effective date.

**Minimal Diversity**

4.       MetroPCS Communications, Inc., which was recently renamed T-Mobile U.S., Inc., is organized under Delaware law and has its principal place of business in a state other than Florida. *See, e.g.*, Second Am. Compl. ¶ 14 ("Parent is a Delaware corporation that operates out of Texas."); Declaration of Jerry Rausch ¶ 6 (attached as Exhibit A); *see also Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1183 (2010) (principal place of business means the place where "high level officers direct, control and coordinate … activities").

5.       MetroPCS Florida, LLC is organized under Delaware law and has its principal place of business in a state other than Florida. *See, e.g.*, Second Am. Compl. ¶ 15 ("Subsidiary is a Delaware corporation licensed to do business in Florida."); Rausch Declaration ¶ 7; *see also* 28 U.S.C. § 1332(d)(10) ("For purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.").

6.       Plaintiff is a citizen of Florida. *See, e.g.*, Second Am. Compl. ¶ 10 ("Plaintiff is a resident of Miami-Dade County."); Rausch Declaration ¶ 5.

7.       Plaintiff brings this action on behalf of two putative classes. The first class, which he has purported to represent since he filed his original Complaint, is called the "Tax

Class" and is defined as Florida consumers who "(a) purchased from [CAI International] a Samsung Galaxy Indulge cellular phone …, (b) were charged $299.99, received a $100 instant rebate, and (d) were charged sales tax on the full (not discounted) $299.99 amount." Second Am. Compl. ¶ 1.

8. The second class, which Plaintiff did not purport to represent until he moved for leave to file his Second Amended Complaint on September 13, 2013, and which is the basis of this Notice, is called the "Contract Class" and is defined as Florida consumers who "became and/or continued to be MetroPCS subscribers under the understanding that except for monthly payment for the wireless services that are [sic] no agreements, contracts and/or contractual 'terms and conditions' regulating the customer or membership relationship between MetroPCS and Florida subscribers/users." *Id.* ¶ 1.

9. Accordingly, there is at least minimal diversity between at least one of the MetroPCS Defendants (citizens of Delaware, Texas and Washington) and both the Plaintiff (a citizen of Florida) and the unnamed members of both putative classes (other citizens of Florida). *See* 28 U.S.C. § 1332(d)(2)(A).

**Numerosity**

10. Plaintiff alleges that "every subscriber … of MetroPCS [is] under the impression and understanding that there were no contracts, agreements or contractual terms and conditions governing their MetroPCS wireless services and products…." Second Am. Compl. at 2; *see also id.* ¶ 4 (alleging that "each individual class member" is in "materially the same situation"); *id.* ¶ 5 ("Each member of the Contract Class became and renewed its subscription with MetroPCS under the belief and understanding that there was no contract or contractual terms and conditions governing the services or product."); *id.* ¶ 6 ("Plaintiff finds himself in the same situation as each

member of each Class"); *id.* ¶ 32 ("each member of Contract Class acquired MetroPCS product or services … under the understanding that there was no contract or contractual terms").

11.     Plaintiff alleges that the members of the "Contract Class" are "so numerous as to make it impractical to bring them all before the court." Second Am. Compl. ¶ 2; *see also id.* ¶ 6 (alleging that class members "are so numerous that individual suits will be unmanageable").

12.     In the last four years, MetroPCS has never had fewer than 1,000,000 subscribers in Florida. *See* Rausch Declaration ¶ 11.

13.     Accordingly, there are more than 100 putative class members. *See* 28 U.S.C. § 1332(d)(5)(B).

## Amount in Controversy

14.     In the last four years, MetroPCS has never collected less than $5,000,000 per month for its various products and services in Florida. *See* Rausch Declaration ¶ 13.

15.     Based on Plaintiff's allegations that every Florida subscriber paid for MetroPCS products and services under the belief that no terms and conditions governed those products and services, the fact that MetroPCS has never collected less than $5,000,000 per month for its various products and services in Florida, and the fact that the putative class period is 48 months, the amount put in controversy by the Second Amended Complaint is greatly in excess of $5,000,000. That number would increase even further if it included alleged damages that accrue after the date of this Notice of Removal.

16.     Accordingly, the aggregate amount in controversy is well in excess of $5,000,000.00.

17.     Additionally, Plaintiff seeks an award of attorneys' fees and costs and asserts claims that could entitle him to punitive damages. *See* Second Am. Compl. at 12. A fee award

in a certified class action can often amount to as much as thirty percent (30%) of a class's recovery, which could increase the amount in controversy by 30% or, put another way, to 130% of the class's claimed recovery.  *See, e.g, Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) (noting that fee awards in class actions can amount to as much as 30% of a classwide recovery). An award of punitive damages could amount to up to nine times the alleged compensatory damages, *see State Farm Mut. Auto Ins. Co v. Campbell*, 538 U.S. 408, 425 (2003) ("few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."), and must be included in the amount in controversy.  *See, e.g.*, *Back Doctors Ltd. v. Metropolitan Prop. & Cas. Ins.*, 637 F.3d 827, 830 (7th Cir. 2011) (Easterbrook, J.).

18.     Plaintiff also seeks an order enjoining MetroPCS from using the industry standard term "no contract" to refer to prepaid wireless services,[2] and an order directing MetroPCS to "disclose in all advertisements of its products and services that contractual terms do apply." Second Am. Comp. at 12.  Due to the interstate nature of MetroPCS marketing and advertising, the costs of complying with either of those requests, let alone both of them, would be substantial. *See* Rausch Declaration ¶ 15.

---

[2]     Never mind that the state court in this case had already rejected the premise of Plaintiff's new "no contract" claim.  *See* Tr. of Third DCA Argument at 26 (attached as part of Exhibit B) ("JUDGE SCHWARTZ: No contract means--- I mean we weren't born yesterday.  MR. DORTA: No contract, Judge--- I'm sorry.  JUDGE SCHWARTZ: In this field we all know, if I go to buy an AT&T … or some competitor and one of them has a no contract and the other has a contract, the other contract--- You see this on television every day. There is no contract involved in this case. You are not bound for a year. And the advertisement says, if you have a contract, you are going to get -- even if it's a lower rate, you are going to wind up paying much more than any other thing because you have agreed to be bound for an extended period of time."); *see also* Cuadras v. MetroPCS, No. 09-7897, slip op. at 9-10 (C.D. Cal. Aug. 8, 2011) (attached as Ex. C) ("The Court is not persuaded … that the T&Cs cannot be a contract because MetroPCS advertises that it is a "no contract" wireless service provider.").

19. Although MetroPCS denies it has any liability to Plaintiff or a putative class,[3] and denies that any such class could be properly certified under Federal Rule of Civil Procedure 23, the aggregate amount placed "in controversy" by this case – that is, the aggregate value of the damages sought by Plaintiff and the aggregate cost of complying with the equitable relief sought by Plaintiff – clearly exceeds $5,000,000.  *See* 28 U.S.C. § 1332(d)(6) ("the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").

20. Because this is a putative class action that was commenced after February 18, 2005 in which there is minimal diversity, more than 100 putative class members, and more than $5,000,000 in the aggregate in controversy, this Court has original subject matter jurisdiction. *See* 28 U.S.C. § 1332(d)(2)(A).

21. Because this action states a basis for original subject matter jurisdiction under 28 U.S.C. § 1332, it is removable under 28 U.S.C. § 1441(a).

**PROCEDURAL STATEMENT**

22. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Second Amended Complaint and all other process, pleadings and orders that Plaintiff purportedly served on MetroPCS as of the date of this Notice are attached collectively as Exhibit B.

23. Pursuant to 28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6, this Notice of Removal has been timely filed within thirty days of receipt of "a copy of an amended

---

[3] By removing an action under CAFA, defendants do not have to concede liability, let alone liability of greater than $5,000,000.  *See, e.g.*, *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir.2010) ("[T]he plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover.") (emphasis in original); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005).

pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." The claims asserted on behalf of the "Tax Class" in the Complaint and First Amended Complaint did not state a basis for subject matter jurisdiction because they did not put more than $5,000,000 in controversy. Indeed, Plaintiff's own allegations put the amount in controversy at between $17,500 and $70,000. *See, e.g.*, Rausch Declaration ¶ 9.

24.     Neither the original Complaint nor First Amended Complaint asserted claims on behalf of the "Contract Class." *See* Compl. & First Am. Compl. (attached as part of Exhibit B). The first pleading that purported to assert claims on behalf of the "Contract Class" was the Second Amended Complaint. *Id.* The Second Amended Complaint does not simply modify or clarify prior pleadings. Rather, it defines an entirely new class with entirely new claims based on entirely new facts. It is, therefore, the "pleading from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b).

25.     The Order granting Plaintiff's Motion for Leave is the event that triggered MetroPCS's ability to remove. *See Schoonover v. West Am. Ins. Co.*, 665 F. Supp. 511, 514 (S.D. Miss. 1987) ("The Court is of the opinion … that the motion [for leave] did not show that the case had become removable, as required by the plain language of 28 U.S.C. § 1446(b), because the state court retained discretion to deny the leave to amend."); 16 James Wm. Moore, *Moore's Federal Practice* § 107.30[2][a][iv][B] ("Most courts, however, require more than the mere service or filing of a motion to amend to trigger the 30-day period, reasoning that the mere motion does not confer federal jurisdiction."). The Motion for Leave was granted on September 20, 2013, which was less than thirty days ago. *See* Order dated Sept. 20, 2013 (attached as part of Exhibit B). Even if the filing or service of the Motion for Leave were the relevant event, however, Plaintiff filed and served that Motion on September 13, 2013, which was still less than

thirty days ago under Federal Rule of Civil Procedure 6(a).

26. Pursuant to 28 U.S.C. § 1453(b), this Notice of Removal has been timely filed because "the 1-year limitation under section 1446(c)(1) shall not apply" to the removal of putative class actions.

27. Pursuant to 28 U.S.C. § 1453(b), a putative class action may be removed to federal court "without regard to whether any defendant is a citizen of the State in which the action is brought."

28. Pursuant to 28 U.S.C. § 1453(b), it is not necessary to obtain the consent of all Defendants in order to remove a putative class action. Nevertheless, every served defendant consents to this removal.

29. Pursuant to 28 U.S.C. § 1441(a), removal to the United States District Court for the Southern District of Florida is proper because that District embraces the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, where this action was commenced. *See* 28 U.S.C. § 89(c).

30. Pursuant to 28 U.S.C. § 1446(d), MetroPCS will promptly file a copy of this Notice of Removal in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, and give Plaintiff written notice of the removal of this action.

31. By removing the action to this Court, MetroPCS does not waive any defenses that are available to it under state or federal law. MetroPCS expressly reserves the right to require that the claims of the Plaintiff and/or certain members of the putative class be decided through individual arbitrations, to move for judgment pursuant to Federal Rules of Civil Procedure 12 and 56, and to strike or oppose the certification of any putative class pursuant to Federal Rule of Civil Procedure 23.

**WHEREFORE**, MetroPCS respectfully removes this action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1441, 1446 and 1453.

Dated: October 15, 2013

By: _____

Aaron S. Weiss (FBN 48813)
Carlton Fields, P.A.
100 S.E. Second Street, Suite 4200
Miami, Florida  33131-2114
Telephone:  (305) 539-7382
Facsimile:  (305) 530-0055
E-mail:   aweiss@carltonfields.com

James B. Baldinger (FBN 869899)
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, FL 33401-6350
Telephone: (561) 650-8026
Facsimile: (561) 659-7368
E-mail:   jbaldinger@carltonfields.com

*Counsel for MetroPCS of Florida, LLC and MetroPCS Communications, Inc.*

Michael J. Stortz
Drinker Biddle & Reath LLP
50 Fremont St., 20th Floor
San Francisco, CA 94105-2235
Telephone:  (415) 591-7583
Facsimile:  (415) 591-7510
E-mail:   michael.stortz@dbr.com

Michael P. Daly
Meredith C. Slawe
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996
Telephone:  (215) 988-2700
Facsimile:  (215) 988-2757
E-mail:  michael.daly@dbr.com
E-mail:   meredith.slawe@dbr.com

*Of counsel for MetroPCS of Florida, LLC and MetroPCS Communications, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that, on the date set forth below, I caused true and correct copies of the foregoing document to be served via first-class mail, postage prepaid, upon the following:

Gonzalo R. Dorta, Esq.
Gonzalo R. Dorta, P.A.
334 Minorca Avenue
Coral Gables, Florida 33134

*Counsel For Plaintiff Jorge Porter*

Manuel Fente, Esq.
Law Offices Of Manuel F. Fente, P.A.
1110 Brickell Avenue, 7th Floor
Miami, Florida  33131

*Counsel for Defendant Cell Access Cellular, Inc.*

Dated:  October 15, 2013            **/s/ Aaron S. Weiss**
                                     Aaron S. Weiss