**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.: 1:13-CV-23745-LENARD/O'SULLIVAN**

---

JORGE PORTER,

              Plaintiff,

       v.

METROPCS COMMUNICATIONS, INC.,
METROPCS FLORIDA, LLC, and
CAI INTERNATIONAL, INC.,

              Defendants.

---

**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY**
**LITIGATION AND INCORPORATED MEMORANDUM OF LAW**

---

Aaron S. Weiss (FBN 48813)
Carlton Fields, P.A.
100 S.E. Second Street, Suite 4200
Miami, Florida 33131-2114
Telephone: (305) 539-7382
Facsimile: (305) 530-0055
E-mail: aweiss@carltonfields.com

James B. Baldinger
525 Okeechobee Blvd., Suite 1200
West Palm Beach, FL 33401-6350
Telephone: (561) 650-8026
Facsimile: (561) 659-7368
E-mail: jbaldinger@carltonfields.com

*Counsel for MetroPCS of Florida, LLC*
*and MetroPCS Communications, Inc.*

Michael J. Stortz
Drinker Biddle & Reath LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7583
Facsimile: (415) 591-7510
E-mail: michael.stortz@dbr.com

Michael P. Daly
Meredith C. Slawe
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Facsimile: (215) 988-2757
E-mail: michael.daly@dbr.com
E-mail: meredith.slawe@dbr.com

*Of counsel for MetroPCS of Florida, LLC*
*and MetroPCS Communications, Inc.*

Defendants MetroPCS Communications, Inc. and MetroPCS Florida, LLC (collectively, "MetroPCS"), by and through counsel and pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, hereby move to compel Plaintiff Jorge Porter ("Plaintiff") to arbitrate his claims against MetroPCS on an individual basis and to stay this action pending arbitration. MetroPCS is joined in this Motion by Defendant CAI International, Inc. ("CAI").

## I.    <u>INTRODUCTION</u>

Plaintiff filed his initial complaint in the Circuit Court of the Eleventh Judicial District in and for Miami-Dade County, Florida.  Defendants moved to compel arbitration pursuant to the MetroPCS Terms and Conditions of Service ("Terms and Conditions").  Plaintiff opposed that motion, admitting that the Terms and Conditions would require him to arbitrate his claims but denying that he had ever received it.

Perhaps recognizing that Defendants would prevail on their arbitration motion, however, Plaintiff filed a Motion for Leave to file a Second Amended Complaint, which the state court granted on September 20, 2013.  The Second Amended Complaint does not simply clarify prior pleadings.  Rather, it defines an entirely new class, asserts entirely new claims, and alleges entirely new facts – all for the purpose of trying to skirt Plaintiff's arbitration agreement. Specifically, he now alleges that the ubiquitous practice of referring to prepaid wireless service as "no contract" service means that his entire agreement – including its arbitration provision – is unenforceable.  Plaintiff makes this "fraud in the inducement" argument, notwithstanding that it has been previously rejected by this Court, by other federal courts, and indeed by the state court in this very case before he amended his pleading.  *See infra* Section IV.D.

Although MetroPCS believes that Plaintiff's claims lack merit, the Terms and Conditions require that an arbitrator, not a court, must make that determination.   MetroPCS therefore respectfully requests the Court compel Plaintiff to arbitrate his claims.

## II.   PROCEDURAL HISTORY

Plaintiff's original Complaint asserted a single claim against Cell Access Cellular, Inc.[1] for violation of the FDUTPA.   Specifically, he claimed that he purchased a Samsung Galaxy Indulge handset from Cell Access Cellular, Inc., which he believed charged him more in sales tax than was permitted under the Florida Tax Code.

MetroPCS moved to compel arbitration of the dispute pursuant to the written arbitration agreement in the Terms and Conditions.[2]   Plaintiff opposed that motion by arguing that the Terms and Conditions had not been provided to him.   He did not, however, dispute the validity or enforceability of the agreement.   On the contrary, he conceded that if, the agreement had been provided to him, he "would be bound by those terms, including an arbitration provision."   Pl.'s Opp. to Mot. to Compel Arbitration and Stay Litigation at 6 (attached as Exhibit A).

To determine whether he had been provided with the Terms and Conditions, Plaintiff deposed two MetroPCS employees:   Hope Norris, the MetroPCS Director of Customer Operations, and Kimberly Reina, the MetroPCS Customer Operations Manager for Southern Florida.   Their depositions, along with the declarations and other evidence in the record, confirmed that Plaintiff would have received the Terms and Conditions on several occasions. Additionally, the record reflects that MetroPCS repeatedly reminded Plaintiff of the existence of the Terms and Conditions and encouraged him to review them *each time* he obtained a new

---

[1]      Plaintiff amended his initial complaint to replace Cell Access Cellular, Inc. with CAI International, Inc. f/k/a Cell Access Cellular, Inc.

[2]      Available at www.metropcs.com/terms.   These Terms and Conditions were available at this link on the MetroPCS website at all relevant times.

MetroPCS handset – which he did *seven* different times since July 2009.  Finally, the record shows that Plaintiff was also directed to the Terms and Conditions via numerous text messages.

Through evidence of its routine business practice, MetroPCS established that Plaintiff would have received numerous copies of and notices about the Terms and Conditions.  As for his purchase of the Samsung handset in January 2012, Yuri Avila, a CAI employee, followed CAI's standard practice and provided Plaintiff with a Start of Service Request Form with the Terms and Conditions and other documents, which notified Plaintiff that his "[u]se of MetroPCS services acknowledges acceptance of our Terms and Conditions of Service found at metropcs.com/terms" Declaration of Yuri Avila ¶ 8 ("Avila Decl.") (attached as Exhibit B) & Exhibit B-3.  Plaintiff's Samsung Galaxy handset offered him full web browsing capability, including the ability to access and read the Terms and Conditions.

At his initial deposition, Plaintiff was unable to deny receiving the Terms and Conditions in January 2012.  When confronted with the Start of Service Request form containing his name, address, account number and password, and attaching the Terms and Conditions, he did not deny receiving it.  Instead, he acknowledged that he may have received it, and had no memory to the contrary.  *See* Pl.'s Sept. 27, 2012 Dep. Tr. at 55:21-56:4 (attached as Exhibit C) ("I don't recall this document, but ***it might have been in that bag when they gave it to me***.") (emphasis added).

On October 22, 2012, the Circuit Court summarily denied the Motion to Compel Arbitration.  MetroPCS took an interlocutory appeal.  On May 15, 2013, the Third District Court of Appeal reversed the Circuit Court and directed it to conduct an "evidentiary hearing of the threshold issue of whether the arbitration clause was contained in a binding agreement between the parties."  *MetroPCS v. Porter*, No. 3D12-3077, slip op., at 2 (Fla. 3d DCA May 15, 2013)

(attached as Exhibit D); *see also* Tr. of Court of Appeal Oral Argument (D.E. 1-3 pp. 145-159). The Court scheduled that evidentiary hearing for Friday, September 20, 2013.

On the eve of the hearing, Plaintiff again changed his story.  For sixteen months, Plaintiff had "ceded that . . . if he had received the Terms [and Conditions] when he purchased the phone, then he would be bound by the Terms [and Conditions] by using the services under known Terms [and Conditions]."  Pl.'s Answer Br. of March 1, 2013 at 10 (attached as Exhibit E). Immediately before the hearing, however, he reversed course.  For the first time, he now argued that the entire agreement could not be enforced because he had been fraudulently induced into accepting it.  *See* Pl.'s Bench Memo at 8-16 (attached as Exhibit F).

Specifically, Plaintiff moved for leave to file his Second Amended Complaint, which added a claim against MetroPCS sounding in fraud in the inducement.  This new claim alleged that MetroPCS engaged in false advertising by using the standard phrase "no contract" to distinguish postpaid services (which require annual service contracts and early termination fees) from MetroPCS's prepaid services (which do not), which he claims is inconsistent with having Terms and Conditions of Service.  He alleged that he "became and continued as [a] METROPCS customer" because of his understanding that there "was no contract or contractual terms and conditions."  Sec. Am. Compl. ¶ 32 (D.E. 1-3 pp. 192-206).

The hearing commenced on September 20, 2013.  At the outset of the hearing, the state court granted Plaintiff's motion for leave to file his Second Amended Complaint.  The hearing did not conclude on that date, and the state court scheduled the second half of the hearing to take place on October 21, 2013.  As the Order granting leave to file the Second Amended Complaint gave rise to federal jurisdiction, MetroPCS removed this action and now renews its motion to compel arbitration of Plaintiff's claims.

4

### III.   FACTUAL BACKGROUND

The facts, as confirmed in this litigation over the last year and a half, reflect that Plaintiff received and agreed to the Terms and Conditions, including arbitration, on numerous occasions, and that the arbitration agreement applies to Plaintiff's dispute with MetroPCS.

### A.   Plaintiff Received and Agreed to the MetroPCS Terms and Conditions

Plaintiff has been a MetroPCS customer since at least July 27, 2009. *See* Declaration of Kimberly Reina ¶ 6 ("Reina Decl.") (attached as Exhibit G). Since that time, Plaintiff has received the Terms and Conditions and notices regarding the Terms and Conditions on numerous occasions in a variety of different formats – for example, accompanying Start of Service Request forms, in Quick Start Guides enclosed with his MetroPCS handsets, on MetroPCS handset boxes and via text message. By purchasing and using his MetroPCS service, Plaintiff accepted and agreed to the Terms and Conditions, including arbitration.

1.   *Plaintiff's First Handset – 2009*

On July 27, 2009, Plaintiff bought a wireless handset and activated MetroPCS service at a MetroPCS corporate store in Coral Gables, Florida. *Id.* At that time, the standard MetroPCS practice was to give all customers who activated new lines of service a copy of the MetroPCS Start of Service Request Form, accompanied by the Terms and Conditions of Service. *Id.* ¶ 7. The Terms and Conditions notified subscribers that use of MetroPCS service constituted acceptance of the agreement:

> **IMPORTANT:  PLEASE READ THIS AGREEMENT CAREFULLY.  IF YOU ARE A NEW CUSTOMER, WHEN YOU INITIATE SERVICE BY ATTEMPTING TO PLACE A CALL ON METROPCS'S WIRELESS SYSTEM … YOU AGREE TO THIS AGREEMENT ….  BY USING METROPCS'S WIRELESS SYSTEM … YOU ARE INDICATING YOUR INTENT TO BE BOUND BY THE TERMS AND CONDITIONS OF SERVICE OF THIS AGREEMENT.**

*Id.* ¶ 9 & Exhibit G-2 at 2 (emphasis in original). Plaintiff then used and paid for his service.

2.      *Plaintiff's Second, Third and Fourth Handsets – 2009*

Plaintiff returned to the same store within his first year of service to buy three new handsets and activate three additional lines for his mother and two of his employees.  *See* Exhibit C at 19:18-22:25.  As before, it was standard practice to give subscribers who activated new lines of service a Start of Service Request Form with the Terms and Conditions.  *See* Exhibit G ¶ 7. And as before, each copy provided that use of service constituted acceptance of the Terms and Conditions:

> **IMPORTANT:   PLEASE READ THIS AGREEMENT CAREFULLY….
> BY USING METROPCS'S WIRELESS SYSTEM OR ANY OTHER
> SERVICE, YOU ARE INDICATING YOUR INTENT TO BE BOUND BY
> THE TERMS AND CONDITIONS OF SERVICE OF THIS AGREEMENT.**

*Id.* ¶ 9 & Exhibit G-2 at 2 (emphasis in original).  Plaintiff continued to receive and pay for service on all four lines.  Exhibit C at 24:24-25:5.

3.      *Plaintiff's Fifth Handset – 2010*

On April 27, 2010, Plaintiff purchased a new MetroPCS handset from a different store. Exhibit G ¶ 15.  At that time, it was standard practice to include a Quick Start Guide inside the boxes of all handsets sold for use with MetroPCS service.  *Id.* ¶ 16.  The Quick Start Guide notified Plaintiff about the Terms and Conditions and directed him to it:

> Use of MetroPCS services acknowledges acceptance of our Terms and Conditions
> of Service found at metropcs.com/terms….  **For the most recent and up-to-date
> version of the MetroPCS Terms and Conditions of Service, please visit
> http://www.metropcs.com/terms.**

*Id.* ¶ 17 & Exhibit G-4 (emphasis in original).  In fact, the Quick Start Guide not only referenced the agreement, but also highlighted its arbitration provision:

> By ... paying for the Service ... you agree to the MetroPCS Terms and Conditions
> of Service … including, but not limited to:
>
> •      You waive your right to a jury trial in disputes with MetroPCS;
> •      *Your disputes with MetroPCS will be decided by an arbitrator;*

> • You waive your right to institute or participate in class action litigation against MetroPCS.

Exhibit G ¶ 17 & Exhibit G-4 (emphasis added).

4.      *Plaintiff's Sixth Handset – 2012*

On January 13, 2012, Plaintiff purchased a new MetroPCS handset (a Samsung R910M Galaxy Indulge) from CAI, an independent retailer.   Exhibit G ¶ 18.   It was during this transaction that he paid sales tax that he now claims was excessive.  First Am. Compl. ¶¶ 35-37 (D.E. 1-3 pp. 109-118).

As before, it was standard practice to include a Quick Start Guide inside the boxes of all handsets sold for use with MetroPCS service.  Exhibit G ¶ 19.  Yuri Avila, the sales associate who assisted Plaintiff with this purchase, followed that practice and personally gave Plaintiff a copy of the Quick Start Guide.  Exhibit B ¶ 7.  As on previous occasions, this Quick Start Guide notified Plaintiff of the Terms and Conditions, including the arbitration provision.  *Id.* ¶ 7 & Exhibit B-2.

Mr. Avila also gave Plaintiff the box in which the handset was packaged.  Exhibit B ¶ 7. The exterior of that box also explicitly referenced the Terms and Conditions:

> Use of MetroPCS services acknowledges acceptance of our Terms and Conditions of Service found at metropcs.com/terms.   Visit metropcs.com or a MetroPCS store for information on specific Terms and Conditions of Service, local coverage area, handset capabilities, and any restrictions.

*Id.* ¶ 7 & Exhibit B-1.  Mr. Avila also filled out a Start of Service Request form, listing his own initials at the bottom and placing Plaintiff's date of birth as the password, and then gave Plaintiff the tear-away "Customer Copy."  Exhibit B ¶¶ 8-9.  The first page of the Customer Copy is a carbon copy that referenced the Terms and Conditions and directed Plaintiff to the MetroPCS website for the most current version: "Use of MetroPCS services acknowledges acceptance of our Terms and Conditions of Service found at metropcs.com/terms."  *Id.* ¶ 9 & Exhibit B-4.  The

second page summarized the Terms and Conditions:

> **For the most recent and up-to-date version of the MetroPCS Terms and Conditions of Service, please visit metropcs.com/terms.**
>
> Welcome to MetroPCS.  We are pleased that you have selected us as your wireless carrier.  Please use this page as a reference for questions about your service and the Terms and Conditions of Service that govern the service you have purchased from MetroPCS.  These Terms and Conditions of Service apply to all wireless services provided by us to you and consist of several parts, which may be amended from time to time.
>
> > The MetroPCS Terms and Conditions of Service
> > (http://www.metropcs.com/terms)
>
> . . . .
>
> **By … (c) using your Service after your Service is activated or after you make a change or addition to your Service; (d) paying for the Service; or (e) failing to activate Service within 30 days after the purchase of your wireless device … you agree to the MetroPCS Terms and Conditions of Service and the terms and conditions of service and use related to any feature you may have selected or may be included in your Rate Plan, including, but not limited to:**
>
> - **You waive your right to a jury trial in disputes with MetroPCS;**
> - **Your disputes with MetroPCS will be decided by an arbitrator;**
> - **You waive your right to institute or participate in class action litigation against MetroPCS ….**

Exhibit B ¶ 8 & Exhibit B-3. (emphasis in original).

Plaintiff acknowledged that he might have received the Start of Service form from Mr.

Avila, and that he had no recollection to the contrary:

> Q.   And do you recall seeing this document when you were purchasing the Samsung in January of 2012?
> A.   I don't recall this document, ***but it might have been in that bag when they gave it to me.***  But I don't recall per se looking at it.
> Q.   So it might have been in the bag they gave you; you can't recall one way or the other?
> A.   ***Correct.***

Exhibit C at 55:21-56:4 (emphasis added).

5.     *Plaintiff's Seventh Handset – 2012*

Plaintiff returned to CAI a few weeks later to exchange his sixth handset for a seventh handset. Exhibit G ¶ 20. As before, it was standard practice to include a Quick Start Guide inside the boxes of all handsets sold for use with MetroPCS service. *Id.* ¶ 21. Consistent with that practice, Plaintiff received another Quick Start Guide that notified him about the Terms and Conditions and directed him to them:

> Use of MetroPCS services acknowledges acceptance of our Terms and Conditions of Service found at metropcs.com/terms…. **For the most recent and up-to-date version of the MetroPCS Terms and Conditions of Service, please visit http://www.metropcs.com/terms.**

*Id.* ¶ 17 & Exhibit G-4 (emphasis in original). As before, it noted not only the existence of the agreement, but also its arbitration provision:

> By ... paying for the Service ... you agree to the MetroPCS Terms and Conditions of Service … including, but not limited to:
>
> •     You waive your right to a jury trial in disputes with MetroPCS;
> •     ***Your disputes with MetroPCS will be decided by an arbitrator;***
> •     You waive your right to institute or participate in class action litigation against MetroPCS[.]

Exhibit G ¶ 17 & Exhibit G-4 (emphasis added). And as before, the exterior of the box explicitly referenced the agreement:

> Use of MetroPCS services acknowledges acceptance of our Terms and Conditions of Service found at metropcs.com/terms. Visit metropcs.com or a MetroPCS store for information on specific Terms and Conditions of Service, local coverage area, handset capabilities, and any restrictions.

Exhibit B ¶ 7 & Exhibit B-1.

6.     *Plaintiff's Other Notices* – 2009 to 2013

Plaintiff also received numerous notifications from MetroPCS reiterating that the Terms and Conditions governed his service and explaining how to find them online. Exhibit G ¶¶ 22-27. First, he received numerous receipts of in-store payments that advised him to "[s]ee

9

metropcs.com for Terms and Conditions of Service." *Id.* ¶ 27 & Exhibit G-6.  Second, after revising the Terms and Conditions in February 2010, MetroPCS sent all subscribers with an active account, including Plaintiff, the following notice by text message:  "Please pay $# by # for Acct# to avoid service interruption. MetroPCS has updated their Terms and Conditions @ http://www.metropcs.com."  Exhibit G ¶ 23.  Third, after revising the Terms and Conditions again in October 2010, MetroPCS again sent all customers with an active account, including Plaintiff, the following notice by text message: "Please pay $# by # for Acct# to avoid service interruption. MetroPCS has updated their Terms and Conditions @ www.metropcs.com/terms." *Id.* ¶ 24.  Finally, MetroPCS sent Plaintiff at least ten bill notices and six payment success notices, all of which reference the Terms and Conditions.  *Id.* ¶¶ 25-26 & Exhibit G-5. Moreover, MetroPCS' advertisements and sales collateral material provides customers, including Plaintiff, with the Terms and Conditions and directs them to its website.  Exhibit G ¶ 28.

Since initiating MetroPCS service in 2009, Plaintiff has used and paid for his service continuously and has not exercised his right to opt out of arbitration despite being given the opportunity to do so.  *Id.* ¶¶ 29-30.

**B.**     **The MetroPCS Terms and Conditions Require Individual Arbitration**

At all relevant times, the MetroPCS Terms and Conditions have contained a written arbitration agreement governing all disputes between Plaintiff and MetroPCS.  The current version provides as follows:

> IMPORTANT: READ THIS AGREEMENT CAREFULLY. IT REQUIRES THE USE OF INDIVIDUAL ARBITRATION RATHER THAN JURY TRIALS OR CLASS ACTIONS TO RESOLVE DISPUTES. ARBITRATION IS MORE INFORMAL THAN LITIGATION BECAUSE IT USES A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY AND ALLOWS FOR LESS DISCOVERY AND LESS APPELLATE REVIEW THAN IN COURT.

. . . .

Any Dispute between you and us shall be resolved, upon the election of either you or us, by binding arbitration. References in this provision to "Dispute" shall be given the broadest possible meaning and shall include any dispute, claim, or controversy arising from or relating to this Agreement or Services and/or Products provided under this Agreement . . . .

*Id.* ¶ 17 & Exhibit G-3 at 2 (emphasis and typography in original).

By: (a) giving us a written or electronic signature or telling us orally that you accept the MetroPCS Terms and Conditions of Service; (b) activating Service (if you are a new subscriber); (c) using your Service after your Service is activated or after you make a change or addition to your Service; (d) paying for the Service; or (e) failing to activate Service within 30 days after the purchase of your wireless device, you agree to the MetroPCS Terms and Conditions of Service and the terms and conditions of service and use related to any feature you may have selected or may be included in your Rate Plan, including, but not limited to:

- You waive your right to a jury trial in disputes with MetroPCS

- Your disputes with MetroPCS will be decided by an arbitrator

- You waive your right to institute or participate in class action litigation against MetroPCS[.]

Exhibit G ¶ 17 & Exhibit G-3 at 1-2.  Notably, all customers, including Plaintiff, were given a

meaningful opportunity to opt out of arbitration:

If you do not wish to be bound by this arbitration agreement, you must notify us in writing at the address set forth in the "Notices" section above within 30 days of initiating Service or, if you never had the opportunity to opt out of arbitration, within 30 days of the date of the change notice giving you that opportunity. . . . Your decision to opt out of this arbitration agreement will not adversely affect our relationship with or delivery of Service to you.

Exhibit G ¶ 17 & Exhibit G-3 at 2.  Despite being given ample opportunity to do so, Plaintiff did

not elect to opt out.  Exhibit G ¶ 30.

MetroPCS' arbitration agreement includes many provisions that are designed to make the

arbitration process accessible and flexible for consumers.   For example, it:   (1) requires

11

MetroPCS to cover all filing fees and arbitrator costs in all cases where the amount in controversy is less than $10,000;[3] (2) allows consumers to select the arbitration administrator;[4] (3) allows arbitration proceedings to be held at a location that is convenient for the consumer;[5] (4) allows consumers to file suit in small claims court if they prefer that instead of arbitration;[6] (5) allows consumers to reject future changes to the arbitration agreement;[7] (6) does not require consumers to keep arbitration awards confidential;[8] (7) makes it easy for consumers to enforce arbitration awards;[9] (8) incorporates the consumer-friendly arbitral rules of consumers' preferred arbitration administrator,[10] which provide for filing fees comparable to those in court,[11] and for

---

[3] *See* Exhibit G ¶ 17 & Exhibit G-3 at 3 ("If your Dispute does not exceed $10,000, we will promptly reimburse your filing fee and will pay the arbitrator's other fees, costs and expenses. (If you cannot pay the filing fee, you may request that we pay the filing fee directly.)").

[4] *See id.* ("The party initiating an arbitration may choose from the following independent, impartial arbitration administrators: . . . .").

[5] *See id.* ("Unless you and we agree otherwise in writing, any arbitration hearings will be held in the county of your then-current account address or (if your account is closed) the last address at which we contacted you.").

[6] *See id.* at 2 ("Notwithstanding the foregoing, either party may bring an individual action in small claims court . . . .").

[7] *See id.* at 3 ("Notwithstanding any provision in this Agreement to the contrary, if we change this arbitration agreement, you may reject the change without terminating or adversely affecting your Service . . . .").

[8] *See id.* at 2 ("Notwithstanding the foregoing, either party may . . . bring Disputes to the attention of federal, state, or local agencies, including, but not limited to, the Federal Communications Commission.").

[9] *See id.* at 3 ("Judgment upon any arbitration award may be entered in any court having jurisdiction.").

[10] *See id.* ("Any arbitration shall be conducted pursuant to the arbitration administrator's rules for consumer disputes in effect when the arbitration is initiated except to the extent they are inconsistent with this arbitration agreement.").

[11] *See, e.g.*, AAA Supplementary Procedures For The Resolution Of Consumer-Related Disputes, Rule C-8 ("If the consumer's claim or counterclaim does not exceed $10,000, then the consumer is responsible for one-half the arbitrator's fees up to a maximum of $125. This deposit is used to pay the arbitrator. It is refunded if not used. . . . The business must pay for all arbitrator compensation deposits beyond those that are the responsibility of the consumer."), available at http://www.adr.org; JAMS Arbitration Demand, available at http://www.jamsadr.com/files/ Uploads/Documents/JAMS_Arbitration_Demand.pdf (setting case management fee at $400).

the waiver of those fees in the case of financial hardship or agreement of the parties;[12] (9) does

not waive the ability to take discovery or appeals;[13] and (10) does not waive consumers' ability,

but does waive MetroPCS' ability, to recover attorneys' fees.[14]

## IV.   ARGUMENT

### A.   Plaintiff Agreed to Arbitrate Disputes With MetroPCS

As a MetroPCS customer since July 2009, Plaintiff has received copies of and notices

about the Terms and Conditions on many occasions.  This includes the January 2012 transaction

during which Plaintiff received the Start of Service Request Form and summary of the Terms of

Conditions – an event that Plaintiff could not dispute at deposition.   Despite repeated notices

and reminders of the Terms and Conditions,[15] Plaintiff never terminated service or exercised his

right to opt out of arbitration.  Instead, he continuously renewed his monthly service.

As a result, Plaintiff is bound by the arbitration agreement in his Terms and Conditions

whether or not he chose to review it.  *See Rivera v. AT&T Corp.*, 420 F. Supp. 2d 1312, 1320-21

---

[12]    *See, e.g.*, AAA Commercial Arbitration Rules, Rule R-49 ("The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees."), available at http://www.adr.org; JAMS  Comprehensive Arbitration Rules, Rule 31 ("Each Party shall pay its *pro rata* share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration, unless the Parties agree on a different allocation of fees and expenses."), available at http://www.jamsadr.com/rules-comprehensive-arbitration/#Rule%2031.

[13]    *See generally* Exhibit G ¶ 17 & Exhibit G-3.

[14]    *See id.* at 3 ("You may hire an attorney to represent you in the arbitration proceeding and may recover your attorneys' fees and costs in arbitration to the same extent as you could in court if the arbitration proceeding is decided in your favor.  We may hire an attorney to represent us in the arbitration proceeding but waive any right to recover our attorneys' fees and costs if the arbitration proceeding is decided in our favor.").

[15]    Defendants' evidence of their custom and practice in notifying customers, including Plaintiff, of the Terms and Conditions is admissible under Federal Rule of Evidence 406.  *See, e.g.,* 2-406 WEINSTEIN'S FEDERAL EVIDENCE § 406.05 ("Testimony of one witness or one admitted document about the habit or routine practice may now be sufficient to establish the foundation for such evidence."); *Hancock v. AT&T, Inc.*, 701 F.3d 1248, 1264 (10th Cir. 2012) (personal knowledge as to particular plaintiff "is not required to admit Rule 406 routine practice evidence.").

(S.D. Fla. 2006) ("Plaintiff Rivera admits that she continued AT&T service for more than a year. . . .[T]hus, the CSA binds Plaintiff[s]. . . ."); *Boyd v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 614 F. Supp. 940, 942 (S.D. Fla. 1985) ("The court is left with a customer who did not examine the arbitration clause because she did not want to or did not know better.  Under these circumstances, the plaintiff cannot be heard to complain about the arbitration provision."). Plaintiff had numerous opportunities to review the Terms and Conditions provided to him or to choose to visit the Terms and Conditions on the MetroPCS website; whether he chose to review them is irrelevant.  *See Rampersand v. Primeco Personal Commc'ns, L.P.*, No. 01-6640, 2001 WL 34872572, at *2 (S.D. Fla. Oct. 16, 2001) ("By taking the risk and activating service without successfully procuring and reading these terms and conditions, Plaintiff bound himself to arbitration."); *Brueggemann v. NCOA Select, Inc.*, No. 08-80606, 2009 WL 1873651, at *4-6 (S.D. Fla. June 29, 2009) (enforcing agreement where plaintiff was advised that entering website constituted acceptance of agreement); *Ozormoor v. T-Mobile USA, Inc.*, No. 08-11717, 2008 WL 2518549, at *1-2 (E.D. Mich. June 19, 2008).

MetroPCS offered Plaintiff the benefits of its wireless handsets and its service, and Plaintiff chose to accept those benefits (and still accepts them to date).  In choosing to do so, Plaintiff agreed to the Terms and Conditions governing his relationship with MetroPCS, which included the arbitration agreement.

**B.      Plaintiff's Arbitration Agreement is Within the Scope of the FAA**

Arbitration agreements must meet only two conditions for the FAA to apply: (1) they must be in writing; and (2) they must be part of "a contract evidencing a transaction involving commerce."  9 U.S.C. § 2.  Agreements that do "shall be valid, irrevocable, and enforceable." *Id.*  Here, the Terms and Conditions are indisputably in writing, they affirmatively state that they

are governed by the FAA, and in any event it is an archetypal example of a contract affecting interstate commerce.  *See, e.g.*, *U.S. v. Evans*, 476 F.3d 1176, 1180-81 (11th Cir. 2007) ("Telephones and cellular telephones are instrumentalities of interstate commerce. . . .  It is well established that telephones, even when used intrastate, constitute instrumentalities of interstate commerce.") (internal citations and quotations omitted).  Accordingly, there can be no doubt that the Terms and Conditions are governed by the FAA.

## C.  <u>Plaintiff's Claims Are Within the Scope of the Arbitration Agreement</u>

Plaintiff's claims fit within the scope of the arbitration provision, which broadly applies to "any dispute, claim, or controversy arising from or relating to these [Terms and Conditions] and/or Products provided under these [Terms and Conditions]."  Exhibit G ¶ 17 & Exhibit G-3. Congress has expressed a strong public policy favoring arbitration pursuant to which courts are not only encouraged, but required, to "rigorously enforce" arbitration agreements.  *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221 (1985).  Congress enacted the FAA to "reverse the longstanding judicial hostility to arbitration agreements" and to place such agreements on "the same footing as other contracts."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002); *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (describing FAA as "a congressional declaration of a liberal federal policy favoring arbitration agreements"); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (noting the "emphatic federal policy in favor of arbitral dispute resolution").  The FAA establishes a public policy that strongly favors the arbitration of disputes and requires courts to enforce arbitration agreements.  *See KPMG v. Cocchi, LLC*, 132 S. Ct. 23, 25 (2011) (The FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution."); *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (quotations and citations omitted); *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 (11th Cir. 2011).

In light of the strong presumption in favor of arbitrability, there can be no dispute that Plaintiff's claims for violations of FDUTPA and for false advertising under Fla. Stat. § 817.41. are arbitrable.  *See, e.g.*, *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (instructing courts to presume that disputes are arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983) (courts should determine scope of agreements "with a healthy regard for the federal policy favoring arbitration," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *see also Stone v. E. F. Hutton & Co., Inc.*, 898 F.2d 1542, 1543 (11th Cir. 1990) (same).

Where, as here, a valid written arbitration agreement exists, arbitration should be required unless it can be said that the arbitration agreement could not be interpreted to apply to the asserted dispute.  *See Moses H. Cone*, 460 U.S. at 24-25; *see also AT&T Techs.*, 475 U.S. at 654 (internal quotations and citation omitted) ("[O]nly the most forceful evidence of a purpose to exclude the claim from arbitration can prevail. . . .").  The Eleventh Circuit has held that such evidence will be found to exist only if the parties "clearly express their intent to exclude categories of claims from their arbitration agreement."  *Paladino v. Avnet Computer Techs., Inc*., 134 F.3d 1054, 1057 (11th Cir. 1998).  This intent is not present in the instant action.  Rather, the arbitration agreement unequivocally covers Plaintiff's claims and any issues regarding arbitrability are for the arbitrator to decide.  *See, e.g., Arlen House Condo. Assoc. v. Hotel Emps. and Rest. Emps. Int'l.*, No. 06-21040, 2008 WL 4844109, at *9 (S.D. Fla. Nov. 10, 2008) (finding that a broad arbitration clause that covers all disputes between the parties authorized the arbitrator to determine issues related to arbitrability).

Given the unambiguous language in the parties' agreement and the robust public policy favoring arbitration, it cannot reasonably be disputed that Plaintiff's claim is due to be resolved in arbitration.  Accordingly, this Court should enforce the arbitration agreement.

**D.**     **A Challenge to the Terms and Conditions As a Whole is for an Arbitrator to Decide**

Plaintiff's new fraud in the inducement argument assails the validity of the Terms and Conditions as a whole, and as such is for an arbitrator to decide in the first instance.

Plaintiff's Second Amended Complaint suggests that MetroPCS' marketing as "false and misleading" because he "became and continued as [a] METROPCS customer under the understanding that there was no contact or contractual terms and conditions regulating the members [sic] subscription or use of METROPCS product [sic] or services."  Sec. Am. Compl. ¶ 32 (D.E. 1-3 pp. 192-206).  This argument relates to the validity of the Terms and Conditions generally, not the arbitration provision specifically.  As such, it is for an arbitrator to decide.  *See Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) (reversing Florida Supreme Court and reaffirming that, "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 406-407 (1967); *Rivera*, 420 F. Supp. 2d at 1323; *Krutchik v. Chase Bank*, 531 F. Supp. 2d 1359, 1363 (S.D. Fla. 2008); *Williams v. MetroPCS*, No. 09-22890, 2010 WL 1645099 slip op. at 12 (attached as Exhibit H) ("[T]he evidence presented concerning MetroPCS' claims – in its advertising, on its website, and on the cover of its cellular phones – that there is "No Contract" does not serve to challenge the validity of the arbitration provision contained in the Terms and Conditions.  Such evidence, sounding in fraud in the inducement, addresses the validity of the entire Terms and Conditions, and is evidence that the arbitrator is to consider.").  Indeed, as this

17

Court explained in *Williams*, "[Plaintiff's] challenge to the Terms and Conditions is to the entirety of that agreement and not simply to the arbitration agreement contained within it. Therefore, it is the arbitrator who must hear charges of fraud in the inducement of that agreement." *Id.* at 13.[16]

**E.**   **Plaintiff Should Be Compelled to Resolve His Claims Through Arbitration**

Where an arbitration agreement is governed by the FAA and a dispute is within its scope, a court's duty is clear: it must compel arbitration and stay further judicial proceedings. *See* 9 U.S.C. §§ 3,4; *see also Moses H Cone,* 460 U.S. at 22 ("[The FAA] provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4."); *Dean Witter Reynolds,* 470 U.S. at 218 ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in original). The result should be no different here; the parties' agreement is within the scope of the FAA and their dispute is within the scope of that agreement.  It follows that the Court should direct Plaintiff to submit his claims to arbitration pursuant to that agreement.

Moreover, although the state court ordered an evidentiary hearing on contract formation, its state procedural rules are not binding on this Court following removal.  *See, e.g.*, *Hanna v.*

---

[16]        And as the state court found in this very case before removal, this argument lacks merit in any event.  *See, e.g.*, Tr. of Court of Appeal Oral Argument at 26 (D.E. 1-3 pp. 145-159) ("JUDGE SCHWARTZ: … I mean we weren't born yesterday.  MR. DORTA: No contract, Judge--- I'm sorry.  JUDGE SCHWARTZ: In this field we all know, if I go to buy an AT&T … or some competitor and one of them has a no contract and the other has a contract, the other contract--- You see this on television every day. There is no contract involved in this case. You are not bound for a year. And the advertisement says, if you have a contract, you are going to get -- even if it's a lower rate, you are going to wind up paying much more than any other thing because you have agreed to be bound for an extended period of time."); *see also Cuadras v. MetroPCS*, No. 09-7897, slip op. at 9-10 (C.D. Cal. Aug. 8, 2011) (attached as Exhibit I) ("The Court is not persuaded … that the T&Cs cannot be a contract because MetroPCS advertises that it is a "no contract" wireless service provider.").

*Plumer*, 380 U.S. 460, 472-73 (1965); *see also Butler v. Saunders*, 2011 WL 4356207, *5-6

(M.D. Fla. Sept. 19, 2011).  Because Plaintiff did not – and could not – deny receiving the Terms

and Conditions with his Start of Service Request form, there is no triable issue and this Court

should therefore grant this Motion and compel arbitration.

**F.**       **This Action Should Be Stayed Pending Arbitration**

Section 3 of the FAA provides that, in any lawsuit "referable to arbitration," the Court

"shall on application of one of the parties stay the trial of the action until such arbitration has

been had in accordance with the terms of the agreement." 9 U.S.C. § 3.  Because the parties have

agreed to arbitrate any disputes relating to MetroPCS' wireless service, and because Plaintiff is

asserting his claims here instead, the Court should direct the parties to arbitration and stay this

action pending the outcome of that arbitration. *See id.; Suarez-Valdez* v. *Shearson Lehman/Am.*

*Express, Inc.,* 858 F.2d 648, 649 (11th Cir. 1988) (affirming stay of action pending arbitration);

*Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004) (quoting *Shearson/Am. Express,*

*Inc. v. McMahon*, 482 U.S. 220, 226 (1987)) ("[A] court must stay its proceedings if it is

satisfied that an issue before it is arbitrable. . . .").[17]

## V.       CONCLUSION

For the foregoing reasons, the Court should compel Plaintiff's claims to arbitration and

stay the case in favor of arbitration.

---

[17]       MetroPCS's obligation to answer, plead or otherwise move in response to the Second Amended Complaint is similarly stayed pending the Court's ruling on the instant Motion.  *See, e.g.*, *In re Barney's, Inc.*, 206 B.R. 336, 340-41 (S.D.N.Y. 1997) (citing cases); *Intravascular Res. Ltd. v. Endosonics Corp.*, 994 F. Supp. 564, (D.C. Del. 1998) ("Historically, motions to stay have been recognized as tolling the time period for answering a complaint"); *see also* 4C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1360 (2009) (noting that judicial efficiency is promoted by a stay of proceedings in cases where "remitting the matter to arbitration is appropriate").

## <u>Rule 7.1(a)(3) Certification</u>

Pursuant to S.D. Fla. L.R. 7.1(a)(3), the undersigned represents that he conferred with counsel for Plaintiff Jorge Porter prior to filing this motion.  Plaintiff Porter is opposed to the issuance of the relief requested herein.

Dated:  October 22, 2013

s/ *Aaron S. Weiss*
Aaron S. Weiss (FBN 48813)
Carlton Fields, P.A.
100 S.E. Second Street, Suite 4200
Miami, Florida 33131-2114
Telephone: (305) 539-7382
Facsimile:  (305) 530-0055
E-mail:  aweiss@carltonfields.com

James B. Baldinger
525 Okeechobee Blvd., Suite 1200
West Palm Beach, FL 33401-6350
Telephone: (561) 650-8026
Facsimile: (561) 659-7368
E-mail:  jbaldinger@carltonfields.com

*Counsel for MetroPCS of Florida, LLC and MetroPCS Communications, Inc.*

Michael J. Stortz
Drinker Biddle & Reath LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7583
Facsimile: (415) 591-7510
E-mail:  michael.stortz@dbr.com

Michael P. Daly
Meredith C. Slawe
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Facsimile: (215) 988-2757
E-mail:  michael.daly@dbr.com
E-mail:  meredith.slawe@dbr.com

*Of counsel for MetroPCS of Florida, LLC and MetroPCS Communications, Inc.*

20

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


Gonzalo R. Dorta
Email:   gdorta@dortalaw.com
Gonzalo R. Dorta, P.A.
334 Minorca Avenue
Coral Gables, Florida 33134
Telephone:     (305) 441-2299
Facsimile:     (305) 441-8849

(Via CM/ECF and U.S. Mail)

*Counsel for Plaintiff Jorge Porter*

Manuel Fente
Email: mfente@fentelaw.com
Law Offices of Manuel F. Fente, P.A.
1110 Brickell Avenue – 7th Floor
Miami, Florida  33131
Telephone: (305) 379-4900
Facsimile: (305) 423-3112

(Via CM/ECF and U.S. Mail)

*Counsel for Defendant CAI International, Inc.*


By: s/ *Aaron S. Weiss*